**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, and THE STATE OF ILLINOIS, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 24-2592 |
| v. | ) ) | |
| THE CITY OF EAST ST. LOUIS, ILLINOIS, | ) ) ) | |
| Defendant. | ) ) ) | |

## COMPLAINT

The United States of America ("United States"), acting on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), and the State of Illinois ("State" or "Illinois"), by and through Kwame Raoul, Attorney General of the State of Illinois, on behalf of the People of the State of Illinois on his own motion and upon the request of the Illinois Environmental Protection Agency ("Illinois EPA"), file this Complaint, and allege as follows:

### NATURE OF ACTION

1.    This is a civil action brought by the United States and the State against the City of East St. Louis, Illinois ("East St. Louis" or "Defendant") under the Clean Water Act ("CWA"). For many years, the Defendant has illegally discharged sewage and other pollutants from its sewage collection system to the waterways in and around East St. Louis.

2.    This action seeks permanent injunctive relief and assessment of civil penalties regarding East St. Louis's operation of its combined sewer (raw sewage, stormwater, and other

1

wastewater) collection and conveyance system and its separate sanitary sewage collection and conveyance system.

3.    East St. Louis's violations have led to discharges of untreated sewage to the Mississippi River and Whispering Willow Lake at Frank Holten State Park, and onto public and private property, including to streets, storm drains, yards, and basements.

4.    The United States and the State allege that Defendant discharged, and continues to discharge, pollutants to the waters of the United States in violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a); that Defendant violated conditions established in the National Pollutant Discharge Elimination System ("NPDES") permit issued to it by Illinois EPA in violation of the CWA; and that Defendant failed to comply with two different administrative orders on consent issued under Section 309(a) of the CWA, 33 U.S.C. § 1319(a). Through this action, the Plaintiffs seek to prevent illegal discharges from both the combined and separate sewer systems to the Mississippi River and Whispering Willow Lake at Frank Holten State Park, as well as onto public and private property. The Plaintiffs also seek to remedy Defendant's violations of its NPDES permit. This case is brought under Section 309(b) and (d) of the CWA, 33 U.S.C. §§ 1319 (b) and (d), and Section 42(d) and (e) of the Illinois Environmental Protection Act, 415 ILCS 5/42(d) and (e).

## JURISDICTION AND VENUE

5.    This Court has jurisdiction over the subject matter of this action pursuant to Sections 309(b) of the CWA, 33 U.S.C. § 1319(b), and 28 U.S.C. §§ 1331, 1345, and 1355.

6.    This Court has supplemental jurisdiction over the State law claims alleged herein pursuant to 28 U.S.C. § 1367(a) because the State claims under the Illinois Environmental

Protection Act, 415 ILCS 5/1 et seq., are related to the federal claims and form part of the same case or controversy.

7.    Venue is proper in the Southern District of Illinois because the City of East St. Louis is located in this judicial district and the causes of action alleged in this Complaint arose in this district. 33 U.S.C. § 1319(b); 28 U.S.C. §§ 1391(b), 1397.

8.    As a signatory to this Complaint, the State of Illinois has actual notice of the commencement of this action pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b).

9.    Authority to bring this civil action is vested in the Attorney General of the United States pursuant to Section 506 of the CWA, 33 U.S.C. § 1366, and 28 U.S.C. §§ 516 and 519.

10.   Plaintiff State is acting through the Illinois Attorney General on his own motion and at the request of the Illinois EPA. Authority to bring this action is vested in the Illinois Attorney General by Section 4 of the Illinois Attorney General Act, 15 ILCS 205/4, and Section 42(d) and (e) of the Illinois Environmental Protection Act, 415 ILCS 5/42(d) and (e).

## DEFENDANT

11.   East St. Louis is a political subdivision of the State of Illinois located in St. Clair County, Illinois. East St. Louis owns and has authority and control over combined and separate sanitary sewer systems, which collect wastewater from residential, commercial, and industrial sources within East St. Louis and transport it to American Bottoms Regional Wastewater Treatment Facility ("American Bottoms Treatment Plant") for treatment.

12.   East St. Louis is a "municipality" and a "person" within the meaning of Section 502(4) and (5) of the CWA, 33. U.S.C. § 1362(4) and (5).

## LEGAL BACKGROUND

### Federal Clean Water Act

13.   The purpose of the CWA is to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). The CWA established a national goal to eliminate the discharge of pollutants to navigable waters. 33 U.S.C. § 1251(a)(1).

14.   Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the "discharge of any pollutant" by any person to navigable waters of the United States except as authorized by an NPDES permit issued by EPA or an authorized State pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

15.   Section 502(12) of the CWA, 33 U.S.C. § 1362(12), defines "discharge of a pollutant" to include "any addition of any pollutant to navigable waters from any point source."

16.   Section 502(6) of the CWA, 33 U.S.C. § 1362(6), includes "sewage" in the definition of the term "pollutant."

17.   Section 502(7) of the CWA, 33 U.S.C. § 1362(7), defines "navigable waters" to be "the waters of the United States, including the territorial seas."

18.   In turn, "waters of the United States" has been defined to include, *inter alia*, all waters which are currently used, were used in the past, or may be susceptible to use in interstate or foreign commerce; and tributaries to such waters. 40 C.F.R. § 120.2 (2023).

19.   Section 502(14) of the CWA, 33 U.S.C. § 1362(14), defines the term "point source" as "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit . . . from which pollutants are or may be discharged."

20.   Section 303(d)(1)(A) of the CWA, 33 U.S.C. § 1313(d)(1)(A), requires each state to create a list of waters within its boundaries that do not meet the applicable water quality standards ("CWA § 303(d) list").

21.   Section 402(a) of the CWA, 33 U.S.C. § 1342(a), provides that the permit-issuing authority, EPA or an authorized state, may issue an NPDES permit which authorizes the discharge of any pollutant to navigable waters, but only in compliance with the applicable requirements of Section 301 of the CWA, 33 U.S.C. § 1311, and such other conditions as the Administrator determines are necessary to carry out the provisions of the CWA and are set forth in such permit.

22.   Section 402(b) of the CWA, 33 U.S.C. § 1342(b), provides that EPA may authorize a state to administer the NPDES program and issue NPDES permits within its jurisdiction. At all times relevant to this Complaint, EPA has authorized the Illinois EPA to administer the NPDES program for regulating discharges of pollutants to navigable waters within its jurisdiction.

23.   EPA retains concurrent enforcement authority pursuant to Section 402(i) of the CWA, 33 U.S.C. § 1342(i).

**State Law**

24.   Section 12(a) of the Illinois Environmental Protection Act, 415 ILCS 5/12(a), prohibits any person from causing, threatening, or allowing the discharge of any contaminant so as to cause or tend to cause water pollution in Illinois or so as to violate regulations or standards adopted by the Illinois Pollution Control Board under the Illinois Environmental Protection Act.

25.   Section 12(d) of the Illinois Environmental Protection Act, 415 ILCS 5/12(d), prohibits any person from depositing any contaminants upon the land in such place and manner so as to create a water pollution hazard.

26.   Section 12(f) of the Illinois Environmental Protection Act, 415 ILCS 5/12(f),
prohibits the discharge of any contaminant into waters of the State without an NPDES permit for
point source discharges issued by the Illinois EPA, or in violation of any term or condition
imposed by such NPDES permit.

27.   Section 3.165 of the Illinois Environmental Protection Act, 415 ILCS 5/3.165,
provides that "Contaminant" is any solid or gaseous matter, any odor, or any form of energy,
from whatever source.

28.   Section 3.550 of the Illinois Environmental Protection Act, 415 ILCS 5/3.550,
provides that "Waters" means all accumulations of water, surface and underground, natural and
artificial, public and private, or parts thereof, which are wholly or partially within, flow through,
or border upon Illinois.

29.   Section 3.545 of the Illinois Environmental Protection Act, 415 ILCS 5/3.545,
provides that "Water pollution" is such alteration of the physical, thermal, chemical, biological,
or radioactive properties of any waters of the State, or such discharge of any contaminant into
any waters of the State, as will or is likely to create a nuisance or render such waters harmful or
detrimental or injurious to public health, safety, or welfare, or to domestic, commercial,
industrial, agricultural, recreational, or other legitimate uses, or to livestock, wild animals, birds,
fish, or other aquatic life.

30.   Section 309.102(a) of the Illinois Pollution Control Board Water Pollution
Regulations, 35 Ill. Adm. Code 309.102(a), provides that, "unless it complies with the [Illinois
Environmental Protection] Act, [Illinois Pollution Control] Board regulations, and the CWA, and
the provisions and conditions of the NPDES permit issued to the discharger, the discharge of any

contaminant or pollutant by any person into the waters of the State from a point source or into a well shall be unlawful."

31.   Section 302.203 of the Illinois Pollution Control Board Water Pollution Regulations, 35 Ill. Adm. Code 302.203, provides that, "Waters of the State must be free from sludge or bottom deposits, floating debris, visible oil, odor, plant or algal growth, and color or turbidity of other than natural origin."

32.   Section 304.106 of the Illinois Pollution Control Board Water Pollution Regulations, 35 Ill. Adm. Code 304.106, provides that, "In addition to the other requirements of this Part, effluent must not contain settleable solids, floating debris, visible oil, grease, scum or sludge solids. Color, odor and turbidity must be reduced to below obvious levels."

33.   Section 306.102(a) of the Illinois Pollution Control Board Water Pollution Regulations, 35 Ill. Adm. Code 306.102(a), provides that, "All treatment works and associated facilities must be constructed and operated to minimize violations of applicable standards during contingencies including flooding, adverse weather, power failure, equipment failure, or maintenance, through measures including multiple units, holding tanks, duplicate power sources, or other appropriate measures."

34.   Section 306.303 of the Illinois Pollution Control Board Water Pollution Regulations, 35 Ill. Adm. Code 306.303, provides that, "Excess infiltration into sewers must be eliminated, and the maximum practicable flow must be conveyed to treatment facilities."

35.   Section 306.304 of the Illinois Pollution Control Board Water Pollution Regulations, 35 Ill. Adm. Code 306.304, provides that, "Overflows from sanitary sewers are prohibited."

36.   Section 309.104(a) of the Illinois Pollution Control Board Water Pollution Regulations, 35 Ill. Adm. Code 309.104(a), provides that "[a]ny permittee who wishes to

continue to discharge after the expiration date of the NPDES Permit must timely apply for reissuance of the permit." An application is considered timely if (a) it is submitted 180 days before the expiration of the current permit, or (b) the permittee requests a waiver from the 180-day requirement, the State grants the waiver, and the applicant applies within the time specified by the waiver. Any waiver must be filed at least 60 days before the permit expires.

**Federal and State Enforcement Provisions**

37.    Section 309(b) of the CWA, 33 U.S.C. § 1319(b), authorizes the Administrator to commence a civil action for appropriate relief, including a permanent or temporary injunction, when a person is in violation of, *inter alia*, Section 301 of the CWA, 33 U.S.C. § 1311, or any permit condition or limitation in an NPDES permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

38.    Section 309(a) of the CWA, 33 U.S.C. § 1319(a), authorizes the Administrator of EPA to issue an order requiring compliance with enumerated sections of the CWA whenever the Administrator finds that any person is in violation of those sections or any condition or limitation that implements those sections. 33 U.S.C. § 1319(a)(1), (a)(3).

39.    Under Section 309(d) of the CWA, 33 U.S.C. § 1319(d), any owner or operator who violates any order issued by the Administrator under Section 309(a) of the CWA, 33 U.S.C. § 1319(a), is liable for civil penalties.

40.    Section 309(d) of the CWA, 33 U.S.C. § 1319(d), also provides that any person who violates Section 301 of the CWA, 33 U.S.C. § 1311, or any condition or limitation in a permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342, shall be subject to a civil penalty of up to $25,000 per day for each violation occurring before January 30, 1997.

8

41.   Under the Federal Civil Penalties Inflation Adjustment Act of 1990, as amended by the Debt Collection Improvement Act of 1996 and the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, 28 U.S.C. § 2461; Pub. L. No. 114-74, § 701, CWA statutory penalties have been adjusted for inflation through 40 C.F.R. § 19.4. As adjusted for inflation pursuant to statute, the relevant maximum civil penalty under Section 309(d) of the CWA is $66,712 per day per violation for violations occurring after November 2, 2015.

42.   Section 42 of the Illinois Environmental Protection Act, 415 ILCS 5/42, provides that any person who violates the Illinois Environmental Protection Act or a regulation of the Illinois Pollution Control Board is liable for a civil penalty of $50,000 for each violation, and an additional civil penalty of up to $10,000 for each day of violation.

43.   Section 42(b)(1) of the Illinois Environmental Protection Act, 415 ILCS 5/42(b)(1), provides that any person who violates Section 12(f) of the Illinois Environmental Protection Act, any NPDES permit or term or condition thereof, or any filing requirement, regulation, or order relating to the NPDES permit program shall be liable for a civil penalty of not to exceed $10,000 per day of violation.

44.   Section 42(d) and (e) of the Illinois Environmental Protection Act, 415 ILCS 5/42(d) and (e), authorizes the Illinois Attorney General to commence a civil action to recover penalties and to restrain violations of the Illinois Environmental Protection Act, any rule or regulation adopted under the Illinois Environmental Protection Act, or any permit or term or condition of a permit, or to require such other actions as may be necessary to address violations of the Illinois Environmental Protection Act, regulation adopted thereunder, or any permit or term or condition of a permit.

**Regulation of Sewage Overflows**

45.   Section 402(q) of the CWA, 33 U.S.C. § 1342(q), provides that each permit, order, or decree issued after December 21, 2000, for discharges from a municipal combined sewer system shall conform to EPA's Combined Sewer Overflow Control Policy ("CSO Policy"), 59 Fed. Reg. 18,688 (Apr. 19, 1994).

46.   The CSO Policy requires permittees with CSOs to implement the Nine Minimum Controls, which are technology-based actions designed to reduce CSOs and their effects on receiving water quality. *Id.* at 18,691.

47.   The CSO Policy also requires permittees to develop a Long-Term Control Plan ("LTCP") for controlling CSOs, designed to achieve compliance with state water quality standards. *Id.* at 18,691.

48.   The CSO Policy expects a permittee's LTCP to give the highest priority to controlling overflows to sensitive areas. *Id.* at 18,692. For such areas, the plan should eliminate or relocate overflows that discharge to sensitive areas wherever physically possible and economically achievable. *Id.* Sensitive areas are determined by the NDPES authority and may include, *inter alia*, waters with primary contact recreation. *Id.*

## GENERAL ALLEGATIONS

**East St. Louis's Sewer Systems**

49.   At all times relevant to this Complaint, East St. Louis has owned and operated a combined sewer system and a separate sewer system, as well as associated collection system equipment and infrastructure (collectively, "sewer systems").  The sewer systems receive and convey wastewater and storm water runoff to the American Bottoms Treatment Plant, which is operated by a third party.

50. "Combined" sewers convey both sanitary sewage and storm water and "separate" sewers convey only sanitary sewage to the treatment plant.

51. East St. Louis's sewer systems serve approximately 18,000 persons. The total service area is approximately 11.5 square miles. The combined sewers serve approximately 8.67 square miles in the older, western portion of East St. Louis; the separated sewers serve approximately 2.83 square miles in the eastern portion of East St. Louis.

**East St. Louis's Combined Sewer System**

52. East St. Louis's combined sewer system includes three Combined Sewer Overflow ("CSO") outfalls (labeled Outfalls 001, 002, and 003), which are authorized to discharge only in accordance with specified conditions in the East St. Louis NPDES Permit. During high-flow conditions, such as times of heavy rain, combined sewage composed of sanitary waste and storm water discharges from these outfalls into the Mississippi River and Whispering Willow Lake at Frank Holten State Park without treatment.

53. Two main pipes known as "trunk lines" transport flow from the combined sewer system to the American Bottoms-East St. Louis Lift Station, which then pumps the flow to the American Bottoms Treatment Plant. The smaller of the two trunk lines (10.5 feet in diameter) empties into the larger trunk line (12.5 feet in diameter) near this lift station.

54. In low-flow conditions, all combined sewage is carried through the sewer system to the American Bottoms Treatment Plant. During high-flow conditions, untreated combined sewage is discharged to the Mississippi River through Outfalls 001 and 002 and into Whispering Willow Lake through Outfall 003.

55. Outfall 001 is downstream of an overflow weir located near the American Bottoms-East St. Louis Lift Station. When the volume of combined sanitary and storm water in the system

exceeds a certain level, untreated combined sewage flows over the weir and into the Mississippi River through Outfall 001.

56. East St. Louis has no method to monitor or characterize the frequency, volume, or duration of CSOs from Outfall 001.

57. However, the American Bottoms Treatment Plant records incidents when flow tops the weir, indicating a CSO discharge at Outfall 001. According to these records, in the time period relevant to this Complaint, there were at least 246 CSOs from Outfall 001, including 19 CSOs on days with zero precipitation the day of the overflow and the day prior. The dates of these CSO discharges are set forth in the accompanying chart attached as Exhibit A, which is incorporated herein.

58. Outfall 001 discharges approximately three miles upstream of Assessment Unit IL_J-36, a segment of the Mississippi River that is listed on the Illinois CWA § 303(d) list as impaired because, among other things, the fecal coliform concentration exceeds Illinois's water quality standards.

59. Outfall 002 is located downstream of the intersection of the two trunk lines that carry combined sewage to the American Bottoms-East St. Louis Lift Station. If the volume of combined sewage in the larger of the two trunk lines exceeds a threshold capacity, flow from the smaller pipe is diverted through an overflow weir and discharges untreated combined sewage to the Mississippi River through Outfall 002.

60. East St. Louis has no method to monitor or characterize the frequency, volume, or duration of CSOs from Outfall 002.

61. Outfall 003 is composed of three 72-inch diameter storm sewer pipes that empty directly into Whispering Willow Lake at Frank Holten State Park. These pipes are connected to

the sanitary sewer system and are believed to provide an overflow that releases untreated combined sewage directly to Whispering Willow Lake when the sanitary system become surcharged, i.e., when it contains a greater volume of water than it can convey.

62.  East St. Louis has discharged combined sewage through CSO Outfall 003 in the time period relevant to this Complaint.

63.  Residents come into direct contact with the water of Whispering Willow Lake. During a March 2021 Inspection, inspectors from EPA and Illinois EPA observed fishing lines and fishing bobbers hanging from the vegetation along the banks of the lake near Outfall 003, indicating that the area in the vicinity of the outfall is used for fishing. Additionally, the Illinois Department of Natural Resources' official website for Frank Holten State Park encourages fishing and boating on the lakes.

64.  During an inspection of CSO outfalls in East St. Louis, EPA inspectors observed toilet paper in the vegetation along the banks of the lake near Outfall 003.

65.  East St. Louis currently has no method to monitor or characterize the frequency, volume, or duration of CSOs from Outfall 003.

66.  The Mississippi River and Whispering Willow Lake are navigable in fact at the location of Outfalls 001, 002, and 003, and are thus "navigable waters" within the meaning of Section 502(7) of the CWA, 33 U.S.C. § 1362(7), and are "waters" within the meaning of Section 3.550 of the Illinois Environmental Protection Act, 415 ILCS 5/3.550.

**East St. Louis's Combined Sewer System – NPDES Permit**

67. On September 11, 2019, Illinois EPA, under the authority of Section 402 of the CWA, 33 U.S.C. § 1342, Section 39(b) of the Illinois Environmental Protection Act, 415 ILCS 5/39(b), and 35 Ill. Adm. Code 309.101 *et seq.*, re-issued NPDES Permit No. IL0033472 (the "2019 Permit") to East St. Louis.

68. The 2019 Permit authorized East St. Louis to discharge pollutants from Outfalls 001, 002, and 003, subject to certain limitations and conditions.

69. Special Condition 8.G.1.a of the 2019 Permit prohibited discharges from the permitted outfalls that "cause or contribute to violations of applicable water quality standards or cause use impairment in the receiving waters."

70. Special Condition 8.C.1 of the 2019 Permit required East St. Louis to comply with the Nine Minimum Controls of EPA's CSO Control Policy, which prohibit CSOs during dry weather. Special Condition 8.B.3 of the 2019 Permit also prohibited overflows during dry weather.

71. Special Condition 4 of the 2019 Permit required East St. Louis to monitor all three outfalls and record the results in Discharge Monitoring Reports ("DMRs") that are submitted to Illinois EPA each month.

72. Special Condition 8.A.1 of the 2019 Permit required East St. Louis to monitor and report the frequency of CSO discharges from each outfall (number of discharges per month) and the duration of these discharges. For CSO events that occur during storms, this Condition also required East St. Louis to monitor and report the storm duration and total rainfall for each storm event. East St. Louis was required to submit this CSO monitoring information to Illinois EPA on a monthly basis.

73.   Pursuant to the Nine Minimum Controls contained in EPA's CSO Control Policy, Special Condition 8.C.1.i of the 2019 Permit required East St. Louis to conduct "[m]onitoring to characterize impacts and efficiency of CSO controls."

74.   Special Condition 8.D.1 of the 2019 Permit required East St. Louis to submit a plan and schedule to eliminate or relocate Outfall 003 within 3 months of the effective date of the Permit, i.e., by December 11, 2019.

75.   Special Condition 8.G.1.b of the 2019 Permit required East St. Louis to develop and submit a CSO LTCP to ensure that CSO discharges authorized by the permit do not cause or contribute to violations of applicable water quality standards.

76.   Special Condition 8.G.1.b of the 2019 Permit specified that the LTCP must comply with Section II.C.4 of EPA's CSO Control Policy. This Section requires that the LTCP contain enough information to either (a) demonstrate that the implementation of the LTCP will achieve compliance with water quality standards, or (b) allow an inference that such compliance will be achieved.

77.   Special Condition 8.C.1 of the 2019 Permit required East St. Louis to develop, implement, and maintain a CSO Pollution Prevention Plan ("PPP"). Per this Condition, the PPP was required to be presented to the public for comments and submitted to Illinois EPA within 12 months of the Effective Date of the Permit, i.e., by September 11, 2020.

78.   Special Condition 8.G.2 of the 2019 Permit required East St. Louis to develop a CSO public notification program that, at a minimum, included public notification of CSO occurrences and impacts.

79.   Per Special Condition 8.G.2, the CSO public notification program was to be presented to the general public at an informational meeting. After this meeting, East St. Louis

was required to submit the following information to Illinois EPA: (1) documentation that the meeting was held; (2) a summary of significant issues raised by the public during the meeting; (3) East St. Louis's response to each significant issue; and (4) any modifications made to the program in response to the meeting.

80.  Special Condition 8.G.2 also required East St. Louis to post and maintain signs at CSO discharge points to notify the public of the possibility of CSO events.

81.  Special Condition 8.E.1 of the 2019 Permit required East St. Louis to develop and implement a CSO Operational and Maintenance Plan ("CSO O&M Plan"). This Plan must include procedures and mechanisms to ensure that the collection system undergoes regularly scheduled inspections, maintenance, and cleaning, and that the system is operated to maximize storage capacity and sewage treatment.

82.  On May 9, 2000, Illinois EPA reviewed and accepted an O&M Plan submitted by East St. Louis.

83.  Special Condition 8.E.2 required East St. Louis to present the CSO O&M Plan at a public information meeting within 9 months of the effective date of the Permit, i.e., by June 11, 2020. The Condition also required that East St. Louis document that the CSO O&M plan complies with the Permit requirements, and that the public meeting occurred. This documentation was to be sent to Illinois EPA within 12 months of the effective date of the permit, i.e., by September 11, 2020, and the plan was to be made available to the public.

84.  In East St. Louis's NPDES Permits, Illinois EPA identified that CSO Outfall 003 discharged to a "sensitive area," as used in the CSO Policy.

85.  A sensitive area includes any water used for primary contact recreation likely to be impacted by a CSO discharge.  Fishing and recreational activity occur at the Frank Holten State Park Lakes, so the Frank Holten State Park Lakes are a sensitive area.

86.  Prior to September 11, 2019 (the effective date of the 2019 NPDES Permit), East St. Louis operated under an NPDES Permit approved on October 22, 2013 (the "2013 Permit").

87.  The relevant provisions of the 2013 Permit and the 2019 Permit (collectively, "Permits") are the same.

88.  On August 31, 2024, the 2019 Permit expired.

89.  East St. Louis did not submit a renewal application 180 days prior to the expiration of the 2019 Permit.

90.  East St. Louis did not request that Illinois grant a waiver to the 180-day requirement prior to the expiration of the 2019 Permit.

91.  East St. Louis failed to timely apply for reissuance of the permit as required by Section 309.104(a) of the Illinois Pollution Control Board Water Pollution Regulations, 35 Ill. Adm. Code 309.104(a).

**East St. Louis's Combined Sewer System – EPA Inspections**

92.  On March 31, 2021, and April 1, 2021, three EPA inspectors conducted an announced inspection of East St. Louis's combined sewer system and evaluated East St. Louis's compliance with the 2019 Permit ("March 2021 Inspection"). Two Illinois EPA inspectors also joined the inspection.

93.  On March 31, 2021, the inspectors interviewed Sam Swanson, then Director of Public Works for East St. Louis. During the interview, Mr. Swanson stated that East St. Louis had not developed a LTCP or PPP. He also stated that: (1) he had not been monitoring CSO

discharges or submitting DMRs to the state; (2) he was unaware of any CSO O&M Plan or the requirement to develop a plan to eliminate Outfall 003; and (3) East St. Louis does not provide any signage or notifications to the public regarding CSOs.

94.   On April 1, 2021, the inspection teams interviewed Girthal Clemmons – the former Director of Public Works who retired in 2020. In the interview, Ms. Clemmons stated that while she began work on the LTCP, PPP, and the CSO O&M Plans, she did not complete these documents.

95.   Ms. Clemmons also stated that East St. Louis hired an engineering firm to design a system to measure flow from Outfall 001, but the project was never completed.

96.   The inspection teams also observed Outfall 003, noting that there was no signage at the discharge location to inform the public that the pipes could contain sanitary waste. The only signage at the location included a series of numbers with no description of their meaning.

97.   At the time of the 2021 inspection there were fishing lines and fishing bobbers hanging from the vegetation along the banks of the lake in the vicinity of Outfall 003.

**East St. Louis's Separate Sewer System**

98.   East St. Louis also operates a separate sewer system that collects and conveys sanitary sewage to the American Bottoms Treatment Plant.

99.   Improper maintenance of East St. Louis's sewer infrastructure has led to discharges of raw sewage from this system, termed sanitary sewer overflows ("SSOs").

100.  East St. Louis's sewer system also receives sanitary sewer flows from the upstream City of Cahokia Heights' sanitary sewer system. Sanitary sewage from the North Centreville area of Cahokia Heights flows into the portion of the East St. Louis trunk line that runs along the border between East St. Louis and Cahokia Heights ("Dayline Track Trunk Line").

101. During an inspection of the East St. Louis sewer system on March 31 – April 1, 2021, EPA identified blocked sewer lines in East St. Louis directly downstream from Cahokia Heights that appeared to impede the flow of sanitary waste from Cahokia Heights.

102. East St. Louis does not have a preventative maintenance program to ensure that sanitary waste from Cahokia Heights flows efficiently through its system.

103. Untreated sewage contains fecal coliform and can carry other bacteria, viruses, parasitic organisms, intestinal worms, and boroughs (inhalable molds and fungi). The diseases these may cause range in severity from mild stomach cramps and diarrhea to life-threatening ailments such as cholera, dysentery, infectious hepatitis, and severe gastroenteritis. Groups facing greater risks include children, the elderly, immuno-compromised individuals, and pregnant women.

**Illinois EPA Inspections of the East St. Louis Sewer System**

104. On June 11, 2021, Illinois EPA inspectors observed raw sewage discharging from a manhole near the intersection of Highway 157 and State Street in Belleville, Illinois, where East St. Louis owns and operates the separate sewer system. The sewage discharge accumulated in a concrete gutter and flowed into a storm sewer drain.  The storm sewer travels northwest along State Street and discharges into Harding Ditch.

105. On April 1, 2022, an Illinois EPA inspector conducted an inspection after a rain event and observed several overflowing manholes and a manhole submerged in flooded surface water behind a residence located at 502 79th Street. The submerged manhole was bubbling with pressurized sewage from the manhole into the surface water.

106. On the same date, the Illinois EPA inspector further evaluated lift stations located near 82nd and 63rd Streets. The lift station near 82nd Street was surcharging at the time of the

inspection. The ground around the lift station near 63rd Street was saturated with sewage and a strong odor of sewage was present at the time of the inspection.

107. On April 7, 2022, an Illinois EPA inspector returned to the location of the manhole that had been submerged in surface water on April 1, 2022. On April 7, 2022, the surface water had receded and sewage solids remained deposited on the ground, the sewer remained backed up, there was no flow within the manhole, and a strong sewage odor remained at the time of the April 7, 2022 inspection.

108. On June 29, 2022, East St. Louis reported to Illinois EPA a sewage overflow continuing intermittently between June 15, 2022 and June 23, 2022 from a manhole occurring at 1100 Quebec Street.

109. On November 21, 2022, East St. Louis reported to Illinois EPA a sewer backup at 3718 State Street, with sewage backed up in a building.

110. On December 5, 2022, East St. Louis reported to Illinois EPA an overflow of process wastewater totaling 5,000 gallons at 3400 Missouri Avenue, causing ponding on the roadways and reentering the CSO system through the storm sewers.

111. In January 2024, East St. Louis reported to Illinois EPA a sewage backup that had occurred in August 2023 at East St. Louis Senior High School.

112. On September 28, 2023, East St. Louis reported to Illinois EPA a sewage overflow at East St. Louis Senior High School that drained to a storm sewer and back into the CSO system that was caused by a broken sewer line.

113. Raw sewage constitutes settleable solids, floating debris, scum, or sludge solids. The raw sewage observed during Illinois EPA's inspections was discharged due to failed operation and maintenance of the collection system.

**The Administrative Orders on Consent**

114. East St. Louis entered into a May 5, 2022 Administrative Order on Consent with EPA to address East St. Louis's failure to comply with certain requirements of its NPDES permit ("2022 CSO Order").

115. Under the 2022 CSO Order, East St. Louis agreed to monitor all CSOs and complete a monthly DMR for each CSO outfall.

116. As of the date of filing of this Complaint, East St. Louis has not installed equipment to conduct this monitoring.

117. As a result of the lack of monitoring, DMRs submitted for Outfalls 001, 002, and 003 do not contain the required information on CSO events.

118. The 2022 CSO Order also requires East St. Louis to notify EPA and Illinois EPA of an SSO within 24 hours by telephone and/or email, and to submit a notification report summarizing the event to both agencies within 5 days.

119. On August 17, 2023, an SSO occurred at East St. Louis Senior High School that lasted for approximately 30-45 minutes.

120. The notification report for this SSO was not submitted to Illinois EPA until January 8, 2024, nearly five months later.

121. East St. Louis entered into a second Administrative Order on Consent with EPA to perform cleaning and maintenance work on the Dayline Track Trunk Line between 89th St. and 53rd St. ("2023 Maintenance Order"), which became effective on July 27, 2023.

122. East St. Louis agreed to hire a professional sewer cleaning firm to clean the Dayline Track Trunk Line between 89th St. and 53rd St. within 45 days of the effective date of the 2023

Maintenance Order, i.e., by September 10, 2023. East St. Louis also agreed to locate, open, and assess the condition of each manhole on that area of the Trunkline by the same date.

123. As of the date of filing of this Complaint, neither the cleaning nor the manhole location and assessment has been completed.

124. East St. Louis agreed to hire a professional firm to televise, meaning inspect using a camera, the Dayline Track Trunk Line between 89th St. and 53rd St. within 60 days of the effective date of the 2023 Maintenance Order, i.e., September 25, 2023. East St. Louis also agreed to repair or replace any damaged or missing manhole covers along this Trunk Line by the same date.

125. As of the date of filing of this Complaint, neither the televising nor the manhole repair and replacement has been completed.

126. East St. Louis agreed to develop a Trunk Line Repair Plan for the Dayline Track Trunk Line between 89th St. and 53rd St within 120 days of the effective date of the 2023 Maintenance Order, i.e., by November 24, 2023. East St. Louis also agreed that by the same date, it would install risers to elevate any manholes in low-lying areas along the same area of this Trunk Line to prevent stormwater from entering the sanitary sewers.

127. As of the date of filing of this Complaint, the work identified in Paragraph 126 has not yet been completed.

128. East St. Louis agreed to develop a Preventative Maintenance Plan to submit to EPA within 150 days of the effective date of the 2023 Maintenance Order, i.e., by December 24, 2023.

129. As of the date of filing of this Complaint, the Preventative Maintenance Plan has not yet been submitted.

130. On November 22, 2023, EPA issued East St. Louis a Notice of Violation for failing to comply with both the 2022 CSO Order and the 2023 Maintenance Order.

## FIRST CLAIM FOR RELIEF

### CSOs – Failure to Develop a LTCP

131. The allegations of Paragraphs 1 through 130 are realleged and incorporated herein by reference.

132. Special Condition 8.G.1.b of the 2019 Permit requires East St. Louis to develop a LTCP to ensure that the CSO discharges authorized by the Permit (a) do not cause or contribute to violations of water quality standards or cause use impairment in the receiving waters and (b) comply with all applicable parts of Ill. Adm. Code 306.305(a) – (d).

133. Per Special Condition 8.G.1.b of the 2019 Permit, East St. Louis was required to submit the LTCP to Illinois EPA within twenty-four months of the effective date of the 2019 Permit, i.e., by September 11, 2021.

134. Special Condition 8.G.1.b states that the LTCP must be consistent with Section II.C.4 of EPA's CSO Control Policy. This Section requires that the LTCP contain enough information to either (a) demonstrate that the implementation of the LTCP will achieve compliance with water quality standards, or (b) allow an inference that such compliance will be achieved.

135. East St. Louis did not submit a LTCP until December 29, 2023, 839 days after the deadline listed in the 2019 Permit.

136. The LTCP that East St. Louis submitted on December 29, 2023 ("Draft LTCP") does not contain any information on the volume or effluent characteristics of CSO discharges from

Outfall 001, 002, or 003. It also does not contain any information on the frequency of CSO discharges from Outfall 002 or 003.

137. Without information on the frequency, volume, and effluent characteristics of CSO discharges, the Draft LTCP cannot quantify the impact of current CSO discharges on water quality.

138. The Draft LTCP does not contain any information to quantify the impact of potential sewer projects on the frequency, volume, or effluent characteristics of CSO discharges. Without this information there is no way to quantify the impact such projects will have on water quality.

139. Because the Draft LTCP does not contain enough information to quantify the effects of current or future projects on CSO discharges and water quality, it does not (a) demonstrate that the implementation of the Draft LTCP will achieve compliance with water quality standards, or (b) allow an inference that such compliance will be achieved. Consequently, the Draft LTCP does not comply with Section II.C.4 of EPA's CSO Control Policy or Special Condition 8.G.1.b of the 2019 Permit.

140. Each day that East St. Louis fails to submit a conforming LTCP constitutes a separate day of violation of Special Condition 8.G.1.b of the 2019 Permit. Section 309(b) and (d) of the CWA, 33 U.S.C. § 1319(b) and (d), provide that any person who violates any condition in an NPDES permit shall be subject to injunctive relief and a civil penalty.

141. For this claim, East St. Louis is subject to injunctive relief, as well as civil penalties in the amounts set forth in Paragraphs 40 – 43 above.

## SECOND CLAIM FOR RELIEF

### CSOs – Prohibited Dry Weather Discharges

142. The allegations of Paragraphs 1 through 130 are realleged and incorporated herein by reference.

143. Special Condition 8.C.1 of the Permits requires East St. Louis to comply with the Nine Minimum Controls of EPA's CSO Control Policy, which prohibit CSOs during dry weather. Special Condition 8.B.3 of the Permits also prohibits overflows during dry weather.

144. At various times relevant to this Complaint, East St. Louis has discharged pollutants from some or all of its CSO outfalls during times of dry weather, in violation of Special Conditions 8.C.1 and 8.B.3. The dates of the dry weather discharges from CSO Outfall 001 described in this Paragraph are set forth in Exhibit A, which is incorporated here.

145. Each of the foregoing discharges violated the terms and conditions of East St. Louis's Permits and/or constitutes a separate violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a) for each day of discharge from each location. Section 309(b) and (d) of the CWA, 33 U.S.C. § 1319(b) and (d), provide that any person who violates Section 301 or any condition in an NPDES permit shall be subject to injunctive relief and a civil penalty.

146. For each violation under this claim, East St. Louis is subject to injunctive relief and civil penalties to the United States and the State in the amounts set forth in Paragraphs 40 – 43 above.

## THIRD CLAIM FOR RELIEF

### CSOs – Failure to Monitor and Report CSO Discharges

147. The allegations of Paragraphs 1 through 130 are realleged and incorporated herein by reference.

Requirements to Monitor CSO Discharges

148. Special Condition 4 of the Permits requires East St. Louis to monitor all three outfalls and record the results in DMRs that are submitted to Illinois EPA each month.

149. As of the date of filing of this Complaint, East St. Louis has not installed any equipment to monitor CSO discharges from any of the three outfalls listed in its permit.

150. While East St. Louis began submitting monthly DMRs in May 2022, these reports do not contain the required information because East St. Louis currently has no way to monitor CSO discharges from Outfalls 002 and 003.

151. On each occasion, for each outfall, that East St. Louis failed to monitor and record CSO discharges in a DMR, East St. Louis violated Special Condition 4 of the Permits.

Additional CSO Monitoring and Reporting Requirements

152. Special Condition 8.A.1 of the Permits requires East St. Louis to monitor the frequency and duration of CSO discharges from each outfall and submit this information monthly with East St. Louis's DMRs. For CSO events that occur during storms, this Condition also requires East St. Louis to monitor and report the storm duration and total rainfall for each storm event.

153. For each CSO event in Appendix A and for each CSO event from Outfalls 002 and 003, East St. Louis failed to submit information about the frequency and duration of CSO

discharges, storm duration, or total rainfall with its DMRs as required by Special Condition 8.A.1.

154. On each occasion, for each outfall, that East St. Louis failed to submit the required CSO discharge information with its monthly DMR, East St. Louis violated Special Condition 8.A.1 of the Permits.

<u>Requirement to Monitor and Characterize the Impacts and Efficiency of CSO Controls</u>

155. Pursuant to the Nine Minimum Controls contained in the National CSO Control Policy published in the Federal Register on April 19, 1994, Special Condition 8.C.1.i of the Permits requires East St. Louis to conduct "[m]onitoring to characterize impacts and efficiency of CSO controls."

156. Because East St. Louis has no way to monitor and characterize discharges from Outfalls 002 and 003 and no way to characterize discharges from Outfall 001, East St. Louis has failed to comply with the requirements of Special Condition 8.C.1.i.

157. On each occasion, for each outfall, that East St. Louis failed to implement monitoring to characterize the impacts and efficiency of CSO Controls, East St. Louis violated Special Condition 8.C.1.i of the Permits.

<u>Summary of Monitoring and Reporting Violations</u>

158. Each of the violations alleged in Paragraphs 149, 150, 153, and 156 constitutes a separate violation of the Permits. Section 309(b) and (d) of the CWA, 33 U.S.C. § 1319(b) and (d), provide that any person who violates any condition in an NPDES permit shall be subject to injunctive relief and a civil penalty.

159. For each violation under this claim, East St. Louis is subject to injunctive relief, as well as civil penalties in the amounts set forth in Paragraphs 40 – 43 above.

## FOURTH CLAIM FOR RELIEF

### CSOs – Failure to Submit a Plan and Schedule to Eliminate or Relocate Outfall 003

160. The allegations of Paragraphs 1 through 130 are realleged and incorporated herein by reference.

161. Special Condition 8.D.1 of the 2019 Permit requires East St. Louis to submit to Illinois EPA a plan and schedule to eliminate or relocate Outfall 003 within 3 months of the effective date of the permit, i.e., by December 11, 2019.

162. As of the date of filing of this Complaint, East St. Louis has not submitted a plan or schedule for the elimination or relocation of Outfall 003.

163. Each day that East St. Louis fails to submit a plan and schedule for the relocation or elimination of Outfall 003 constitutes a separate day of violation of Special Condition 8.D.1 of the 2019 Permit. Section 309(b) and (d) of the CWA, 33 U.S.C. § 1319(b) and (d), provide that any person who violates any condition in an NPDES permit shall be subject to injunctive relief and a civil penalty.

164. For each violation under this claim, East St. Louis is subject to injunctive relief, as well as civil penalties in the amounts set forth in Paragraphs 40 – 43 above.

## FIFTH CLAIM FOR RELIEF

## CSOs – Failure to Develop and Implement Plans or Programs Required by the 2019 Permit

165. The allegations of Paragraphs 1 through 130 are realleged and incorporated herein by reference.

Pollution Prevention Plan (PPP)

166. Special Condition 8.C.1 of the 2019 Permit requires East St. Louis to develop, implement, and maintain a CSO PPP. Per this Condition, East St. Louis was required to present

the PPP to the public for comments and then submit the PPP to Illinois EPA within 12 months of the Effective Date of the Permit, i.e., by September 11, 2020, along with documentation that the PPP complies with Permit requirements and was properly presented to the public.

167. As of the date of filing of this Complaint, East St. Louis has not presented a PPP for public comment or submitted a PPP to Illinois EPA.

168. Each day that East St. Louis failed to develop the PPP by the required deadline and each day that East St. Louis continues to fail to submit the required documentation and present the plan for public comment constitutes a separate day of violation of East St. Louis's 2019 Permit.

CSO Public Notification Program

169. Special Condition 8.G.2 of the 2019 Permit requires East St. Louis to develop a CSO Public Notification Program that, at a minimum, includes public notification of CSO occurrences and impacts. Per this condition, East St. Louis was required to present the program at a public informational meeting. After this meeting, Special Condition 8.G.2 requires East St. Louis to submit: (1) documentation that the meeting was held; (2) a summary of significant issues raised by the public during the meeting; (3) East St. Louis's response to each significant issue; and (4) any modifications made to the program in response to the meeting.

170. Special Condition 8.G.2 of the 2019 Permit specifically requires that as part of the Public Notification Program, East St. Louis must post and maintain signs at CSO discharge points to notify the public of the potential for CSO events.

171. As of the date of filing of this Complaint, East St. Louis has not developed a Public Notification Program or presented it to the public.

29

172. Each day that East St. Louis fails to develop a CSO Public Notification Program and comply with the related Permit requirements constitutes a separate day of violation of East St. Louis's 2019 Permit.

CSO Operation & Maintenance Plan

173. Special Condition 8.E.1 of the 2019 Permit requires East St. Louis to develop and implement a CSO O&M Plan to ensure that the collection system undergoes regularly scheduled inspections, maintenance, and cleaning.

174. Special Condition 8.E.2 requires East St. Louis to present the CSO O&M Plan at a public information meeting within 9 months of the effective date of the Permit, i.e., by June 11, 2020. The Condition also requires that East St. Louis document that the CSO O&M plan complies with the Permit requirements, and that the public meeting occurred. This documentation was to be sent to Illinois EPA within 12 months of the effective date of the permit, i.e., by September 11, 2020. The 2019 Permit also requires that the CSO O&M Plan be made available to the public.

175. As of the date of filing of this Complaint, East St. Louis has not presented a CSO O&M Plan at a public information meeting and has not submitted the required documentation to Illinois EPA.

176. East St. Louis has been unable to locate a copy of the original CSO O&M Plan as of the date of the filing of this Complaint.

177. By failing to present the CSO O&M Plan to the public, submit the required documentation to Illinois EPA, and have a copy of the CSO O&M Plan available to the public, East St. Louis violated Special Condition 8.E.2 of the 2019 Permit.

178. Each day that East St. Louis failed to comply with Special Condition 8.E.2 constitutes a separate day of violation of the 2019 Permit.

Summary of Violations Related to Plans and Programs Required by the 2019 Permit

179. Each of the violations alleged in Paragraphs 167, 171 and 177 constitutes a separate violation of the 2019 Permit. Section 309(b) and (d) of the CWA, 33 U.S.C. § 1319(b) and (d), provide that any person who any condition in an NPDES permit shall be subject to injunctive relief and a civil penalty.

180. For each violation under this claim, East St. Louis is subject to injunctive relief, as well as civil penalties in the amounts set forth in Paragraphs 40 – 43 above.

## SIXTH CLAIM FOR RELIEF

### SSOs and Other Unpermitted Discharges

181. The allegations of Paragraphs 1 through 130 are realleged and incorporated herein by reference.

182. At various times relevant to this Complaint, East St. Louis has discharged untreated sewage from its sanitary sewer system, including at manholes and in the form of basement backups.  These discharges have been onto public and private property, including but not limited to streets, storm drains, yards, and buildings, in violation of Standard Condition 5 of the 2019 Permit, Sections 12(a), 12(d), and 12(f) of the Illinois Environmental Protection Act, 415 ILCS 5/12(a), 12(d), and 12(f), and/or Sections 306.102(a), 306.303, and 306.304 of the Illinois Pollution Control Board Water Pollution Regulations, 35 Ill. Adm. Code 306.102(a), 306.303, and 306.304.

183. The sanitary sewer system and other unpermitted discharges described in Paragraphs 104 through 112 are discharges of "contaminants" within the meaning of Section 3.165 of the Illinois Environmental Protection Act, 415 ILCS 5/3.165.

184. The unpermitted discharges set forth in Paragraphs 104 through 112 violate Section 12(a) and 12(f) of the Illinois Environmental Protection Act, 415 ILCS 5/12(a) and (f), and Section 309.102(a) of the Illinois Pollution Control Board Water Pollution Regulations, 35 Ill. Adm. Code 309.102(a), which prohibits entities from causing or allowing discharges of contaminants so as to cause or tend to cause water pollution and causing, threatening, or allowing a discharge of contaminants that violates permit terms.  Section 42(d) and (e) of the Illinois Environmental Protection Act, 415 ILCS 5/42 (d) and (e), provide that any person who violates the Illinois Environmental Protection Act or a regulation of the Illinois Pollution Control Board shall be subject to injunctive relief and a civil penalty.

185.  The discharges set forth in Paragraphs 104 through 107 also violate Sections 302.203 and 304.106 of the Illinois Pollution Control Board Water Pollution Regulations, 35 Ill. Adm. Code 302.203 and 304.106, which prohibits discharging effluent that constitutes an offensive discharge and allowing unnatural sludge, floating debris, or odor in a water of the State that constitutes an offensive condition.

186. Standard Condition 5 of the 2019 Permit requires East St. Louis to "properly operate and maintain all facilities and systems of treatment and control" that East St. Louis uses to comply with the conditions of the 2019 Permit.

187. Special Condition 8.B.4 of the 2019 Permit states that East St. Louis's "collection system shall be operated to optimize transport of wastewater flows . . . ."

188. All discharges described in Paragraphs 104 through 107, 182, and 184 result, at least in part, from East St. Louis's failure to properly operate and maintain its sanitary sewer system, and the discharges are a failure to optimize transport of wastewater flows for treatment.

189. Thus, all discharges described in Paragraphs 104 through 107, 182, and 184 demonstrate violations of Standard Condition 5 and Special Condition 8.B.4 of the 2019 Permit.

190. Sections 306.102(a), 306.303, and 306.304 of the Illinois Pollution Control Board Water Pollution Regulations, 35 Ill. Adm. Code 306.102(a), 306.303, and 306.304, make it a violation to fail to maintain sanitary sewer systems and prohibit overflows from sanitary sewers.

191. All sanitary sewer system discharges described in Paragraphs 182 through 185 violate Section 306.304 of the Illinois Pollution Control Board Water Pollution Regulations, 35 Ill. Adm. Code 306.304.

192. Section 309(b) and (d) of the CWA, 33 U.S.C. § 1319(b) and (d), provide that any person who violates any condition in an NPDES permit shall be subject to injunctive relief and a civil penalty. Section 42(d) and (e) of the Illinois Environmental Protection Act, 415 ILCS 5/42 (d) and (e), provide that any person who violates the Illinois Environmental Protection Act or a regulation of the Illinois Pollution Control Board shall be subject to injunctive relief and a civil penalty.

193. For each violation under this claim, East St. Louis is subject to injunctive relief, as well as civil penalties in the amounts set forth in Paragraphs 40 – 43 above.

## SEVENTH CLAIM FOR RELIEF

### Failure to Comply with the 2022 CSO Order

194. The allegations of Paragraphs 1 through 130 are realleged and incorporated herein by reference.

195. The 2022 CSO Order is an Administrative Order on Consent that was issued by EPA under Section 309(a) of the CWA, 33 U.S.C. § 1319(a). East St. Louis voluntarily entered into the 2022 CSO Order, which became effective on May 5, 2022, and is still in effect.

196. Under Section 309(d) of the CWA, 33 U.S.C. § 1319(d), any owner or operator who violates any order issued by the Administrator under Section 309(a) of the CWA, 33 U.S.C. § 1319(a), is liable for civil penalties in the amount set forth in Paragraph 40 above.

<u>Failure to Monitor and Report CSOs</u>

197. Under the 2022 CSO Order, East St. Louis agreed to monitor all CSO outfalls and complete a monthly DMR for each CSO outfall.

198. As of the date of filing of this Complaint, East St. Louis has not installed equipment to conduct this monitoring. As a result, DMRs submitted for Outfalls 002 and 003 do not contain the required information on CSO events.

199. East St. Louis violated the 2022 CSO Order by failing to conduct the required CSO monitoring and failing to submit DMRs with the required information. Each day that East St. Louis fails to comply with the monitoring requirements of the 2022 CSO Order constitutes a separate violation.

Failure to Provide Timely Notification of SSOs to EPA and Illinois EPA

200. The 2022 CSO Order requires East St. Louis to notify EPA and Illinois EPA of an SSO within 24 hours by telephone and/or email, and to submit a notification report summarizing the event to both agencies within 5 days.

201. On August 17, 2023, an SSO occurred at East St. Louis Senior High School in East St. Louis that lasted for approximately 30-45 minutes.

202. East St. Louis did not submit a notification report for this SSO to Illinois EPA until January 8, 2024.

203. By failing to provide notification and proper documentation of this SSO to EPA and Illinois EPA within the required time frame, East St. Louis violated the 2022 CSO Order.

Summary of Violations of the 2022 CSO Order

204. Each of the violations alleged in Paragraphs 199 and 203 constitutes a separate violation of the 2022 CSO Order.

205. For each violation under this claim, East St. Louis is subject to civil penalties in the amount set forth in Paragraphs 40 – 41 above.

**EIGHTH CLAIM FOR RELIEF**

**Administrative Order – Failure to Comply with the 2023 Maintenance Order**

206. The allegations of Paragraphs 1 through 130 are realleged and incorporated herein by reference.

207. The 2023 Maintenance Order is an Administrative Order on Consent that was issued by EPA under Section 309(a) of the CWA, 33 U.S.C. § 1319(a). East St. Louis voluntarily entered into the 2023 Maintenance Order, which became effective on July 27, 2023, and is still in effect.

208. Under Section 309(d) of the CWA, 33 U.S.C. § 1319(d), any owner or operator who violates any order issued by the Administrator under Section 309(a) of the CWA, 33 U.S.C. § 1319(a), is liable for civil penalties in the amount set forth in Paragraph 40 above.

209. Under the 2023 Maintenance Order, East St. Louis agreed to take the following actions:

      a.     Hire a professional sewer cleaning firm to clean the Dayline Track Trunk Line by September 10, 2023;

      b.     Locate, open, and assess the condition of the manholes on the Dayline Track Trunk Line by September 10, 2023;

      c.     Hire a professional firm to televise the Dayline Track Trunk Line by September 25, 2023;

      d.     Repair or replace any damaged or missing manhole covers on the Dayline Track Trunk Line by September 25, 2023;

      e.     Develop a Trunk Line Repair Plan for the Dayline Track Trunk Line by November 24, 2023;

      f.     Install risers to elevate any manholes in low-lying areas along the Dayline Track Trunk Line by November 24, 2023; and

      g.     Develop a Preventative Maintenance Plan and submit the Plan to EPA by December 24, 2023.

210. As of the date of filing of this Complaint, East St. Louis has not completed the work required by Paragraph 209.

211. Each day that East St. Louis fails to comply with the 2023 Maintenance Order constitutes a separate day of violation of the Order and of the CWA.

212. For each violation under this claim, East St. Louis is subject to civil penalties in the amount set forth in Paragraphs 40 – 41 above.

## NINTH CLAIM FOR RELIEF

### Discharges Without a Valid NPDES Permit

213. The allegations of Paragraphs 1 through 130 are realleged and incorporated herein by reference.

214. Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the "discharge of any pollutant" by any person to navigable waters of the United States except as authorized by an NPDES permit.

215. East St. Louis's NPDES permit expired on August 31, 2024.

216. East St. Louis did not submit a timely application for reissuance of the 2019 Permit, and thus is not authorized to discharge pursuant to this permit after August 31, 2024.

217. After August 31, 2024, East St. Louis discharged sewage from Outfall 001 into the Mississippi River on numerous occasions, including September 22, 23, and 24, 2024, according to records from the American Bottoms Treatment Plant.

218. At the time of these discharges, East St. Louis did not have a valid NPDES permit.

219. Each day that East St. Louis discharged pollutants to navigable waters without a valid NPDES permit constitutes a separate violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a); Section 12(f) of the Illinois Environmental Protection Act, 415 ILCS 5/12(f); and Section 309.104 of Illinois Pollution Control Board Water Pollution Regulations, 35 Ill. Adm. Code 309.104. Section 309(b) and (d) of the CWA, 33 U.S.C. § 1319(b) and (d), provide that any person who violates Section 301 of the CWA shall be subject to injunctive relief and a civil penalty.

220.  For each violation under this claim, East St. Louis is subject to injunctive relief, as well as civil penalties in the amount set forth in Paragraphs 40 – 41 above.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, the United States of America and the State of Illinois, respectfully request that the Court:

A.  Issue a permanent injunction directing East St. Louis to take all steps necessary to come into permanent and continuing compliance with all terms and conditions of all applicable NPDES permit, Sections 12(a), (d), and (f) of the Illinois Environmental Protection Act, 415 ILCS 5/12(a), (d), and (f), and Sections 302.203, 304.106, 306.102(a), 306.303, 306.304, 309.102(a), and 309.104 of the Illinois Pollution Control Board Water Pollution Regulations, 35 Ill. Adm. Code 302.203, 304.106, 306.102(a), 306.303, 306.304, 309.102(a), and 309.104, and with CWA Section 301(a), 33 U.S.C. § 1311(a), including, without limitation:

1.  Developing and implementing a LTCP that conforms to EPA's CSO Control Policy;

2.  Performing work in the combined sewer system to eliminate dry weather overflows from all outfalls;

3.  Installing equipment to monitor and characterize CSO discharges from Outfalls 001, 002, and 003, and reporting these discharges to EPA and Illinois EPA as required by the 2019 Permit;

4.  Developing and implementing a plan to relocate or eliminate Outfall 003;

5. Complying with all permit requirements regarding the development, implementation, public notice, and documentation of a PPP, a CSO Public Notification Program, and a CSO O&M Plan;

6. Increasing sewer capacity, improving operation and maintenance, and taking other necessary actions to prevent sanitary sewer overflows and any sewer overflows that release sewage into buildings, yards, streets, and other areas where persons may come into contact with it;

7. Complying with all requirements of the 2022 CSO Order;

8. Complying with all requirements of the 2023 Maintenance Order.

B. Issue a permanent injunction directing East St. Louis to mitigate the past environmental harm caused by the violations of its NPDES permits.

C. Order Defendant to pay a civil penalty to the United States of up to $66,712 per day per violation, for each CWA violation.

D. Order Defendant to pay a civil penalty to the State of Illinois of $50,000 for each violation of Sections 12(a) and (d) of the Illinois Environmental Protection Act, 415 ILCS 5/12(a) and (d), and Sections 302.203, 304.106, 306.102(a), 306.303, and 306.304 of the Illinois Pollution Control Board Water Pollution Regulations, 35 Ill. Adm. Code 302.203, 304.106, 306.102(a), 306.303, and 306.304,  and an additional penalty of $10,000 for each day of such violation, and $10,000 for each day of violation of Section 12(f) of the Illinois Environmental Protection Act, 415 ILCS 5/12(f), and Sections 309.102(a) and 309.104 of the Illinois Pollution Control Board Water Pollution Regulations, 35 Ill. Adm. Code 309.102(a) and 309.104.

E. Grant the Plaintiffs such further relief as the Court deems just and proper.

Respectfully submitted,

FOR THE UNITED STATES OF
AMERICA:

TODD KIM
Assistant Attorney General
Environment and Natural Resources
Division
United States Department of Justice

s/ *Nicholas McDaniel*
NICHOLAS McDANIEL
LAUREN MATOSZIUK
Environmental Enforcement Section
United States Department of Justice
P.O. Box 7611
Washington DC 20044-7611
301 Howard Street, Suite 1050
202-514-0096
Nicholas.McDaniel@usdoj.gov
Lauren.Matosziuk@usdoj.gov

OF COUNSEL

DEBORAH CARLSON
EMMA GARL-SMITH
Associate Regional Counsel
United States EPA, Region 5
Chicago, IL 60604

COLIN HUGHES
Water Enforcement Division
Office of Civil Enforcement
Office of Enforcement and Compliance
Assurance
United States EPA
Washington, DC 20460

RACHELLE AUD CROWE
United States Attorney
Southern District of Illinois

40

FOR THE STATE OF ILLINOIS:

PEOPLE OF THE STATE OF ILLINOIS,
*ex rel*. KWAME RAOUL, Attorney
General of the State of Illinois,

MATTHEW J. DUNN, Chief
Environmental Enforcement/
Asbestos Litigation Division

By:       */s/ Rachel R. Medina*

RACHEL R. MEDINA, Chief
Environmental Bureau
Assistant Attorney General
ARDC # 6297171

OF COUNSEL:
Christina Briggs # 6327367
Caitlin Kelly # 6340850
Emma Hudspath # 6324083
Assistant Attorneys General
Environmental Bureau
Illinois Attorney General's Office
500 South Second Street
Springfield, Illinois 62706
Phone: (217) 557-0586
christina.briggs@ilag.gov
caitlin.kelly@ilag.gov
emma.hudspath@ilag.gov

# Exhibit A

# CSO Discharges

Exhibit A

| Outfall 001 CSO Discharges | |
|---|---|
| **Year** | **Date** |
| **2017**<br>**23 Overflows** | 3/1/2017 |
| | 3/25/2017 |
| | 3/30/2017 |
| | 4/5/2017 |
| | 4/26/2017 |
| | 4/27/2017 |
| | 4/28/2017 |
| | 4/29/2017 |
| | 4/30/2017 |
| | 5/1/2017 |
| | 5/3/2017 |
| | 5/4/2017 |
| | 5/5/2017 |
| | 5/6/2017 |
| | 5/7/2017 |
| | 5/8/2017 |
| | 5/9/2017 |
| | 5/10/2017 |
| | 5/11/2017 |
| | 5/12/2017 |
| | 6/18/2017 |
| | 8/17/2017 |
| | 10/10/2017 |

Exhibit A

| Outfall 001 CSO Discharges | |
|---|---|
| **Year** | **Date** |
| **2018**<br>**33 Overflows** | 1/22/2018 |
| | 2/20/2018 |
| | 2/24/2018 |
| | 3/19/2018 |
| | 3/27/2018 |
| | 3/29/2018 |
| | 4/14/2018 |
| | 5/3/2018 |
| | 5/18/2018 |
| | 5/19/2018 |
| | 5/21/2018 |
| | 6/9/2018 |
| | 6/19/2018 |
| | 6/26/2018 |
| | 6/28/2018 |
| | 6/29/2018 |
| | 7/3/2018 |
| | 7/14/2018 |
| | 7/15/2018 |
| | 7/26/2018 |
| | 7/30/2018 |
| | 8/7/2018 |
| | 8/15/2018 |
| | 8/24/2018 |
| | 9/7/2018 |
| | 9/8/2018 |
| | 9/9/2018 |
| | 9/10/2018 |
| | 11/5/2018 |
| | 12/1/2018 |
| | 12/14/2018 |
| | 12/15/2018 |
| | 12/31/2018 |

Exhibit A

| Outfall 001 CSO Discharges ||
| Year | Date |
| --- | --- |
| 2019<br>48 Overflows<br>(1-24) | 1/22/2019 |
| | 1/23/2019 |
| | 2/6/2019 |
| | 2/7/2019 |
| | 3/9/2019 |
| | 3/13/2019 |
| | 3/14/2019 |
| | 3/24/2019 |
| | 3/25/2019 |
| | 3/30/2019 |
| | 4/8/2019 |
| | 4/14/2019 |
| | 4/18/2019 |
| | 4/25/2019 |
| | 4/30/2019 |
| | 5/4/2019 |
| | 5/8/2019 |
| | 5/9/2019 |
| | 5/21/2019 |
| | 5/22/2019 |
| | 5/23/2019 |
| | 5/29/2019 |
| | 5/30/2019 |
| | 6/1/2019 |

| Outfall 001 CSO Discharges ||
| Year | Date |
| --- | --- |
| 2019<br>48 Overflows<br>(25-48) | 6/2/2019 |
| | 6/5/2019 |
| | 6/6/2019 |
| | 6/8/2019 |
| | 6/16/2019 |
| | 6/21/2019 |
| | 6/22/2019 |
| | 6/26/2019 |
| | 6/27/2019 |
| | 7/10/2019 |
| | 7/17/2019 |
| | 7/22/2019 |
| | 7/29/2019 |
| | 8/12/2019 |
| | 8/13/2019 |
| | 8/22/2019 |
| | 8/25/2019 |
| | 8/30/2019 |
| | 8/31/2019 |
| | 9/8/2019 |
| | 10/26/2019 |
| | 11/29/2019 |
| | 11/30/2019 |
| | 12/29/2019 |

Exhibit A

| Outfall 001 CSO Discharges ||
| Year | Date |
| --- | --- |
| **2020**<br>**37 Overflows** | 1/9/2020 |
| | 1/10/2020 |
| | 1/11/2020 |
| | 1/17/2020 |
| | 1/18/2020 |
| | 2/9/2020 |
| | 3/19/2020 |
| | 4/25/2020 |
| | 4/26/2020 |
| | 4/28/2020 |
| | 4/29/2020 |
| | 5/16/2020 |
| | 5/17/2020 |
| | 5/27/2020 |
| | 5/28/2020 |
| | 6/21/2020 |
| | 6/30/2020 |
| | 7/15/2020 |
| | 7/19/2020 |
| | 7/20/2020 |
| | 7/21/2020 |
| | 7/22/2020 |
| | 7/30/2020 |
| | 8/9/2020 |
| | 8/10/2020 |
| | 8/11/2020 |
| | 8/12/2020 |
| | 10/18/2020 |
| | 10/19/2020 |
| | 10/20/2020 |
| | 10/21/2020 |
| | 10/26/2020 |
| | 11/14/2020 |
| | 11/15/2020 |
| | 11/21/2020 |
| | 11/22/2020 |
| | 11/25/2020 |

Exhibit A

| Outfall 001 CSO Discharges ||
| Year | Date |
|---|---|
| **2021**<br>**34 Overflows** | 1/1/2021 |
| | 1/25/2021 |
| | 1/30/2021 |
| | 1/31/2021 |
| | 2/28/2021 |
| | 3/11/2021 |
| | 3/17/2021 |
| | 3/18/2021 |
| | 3/25/2021 |
| | 3/26/2021 |
| | 4/7/2021 |
| | 4/8/2021 |
| | 4/10/2021 |
| | 4/29/2021 |
| | 5/27/2021 |
| | 6/25/2021 |
| | 6/26/2021 |
| | 6/27/2021 |
| | 6/28/2021 |
| | 7/1/2021 |
| | 7/10/2021 |
| | 7/16/2021 |
| | 7/25/2021 |
| | 8/8/2021 |
| | 8/9/2021 |
| | 8/12/2021 |
| | 8/13/2021 |
| | 8/30/2021 |
| | 9/4/2021 |
| | 9/21/2021 |
| | 10/2/2021 |
| | 10/3/2021 |
| | 10/24/2021 |
| | 10/25/2021 |

Exhibit A

| Outfall 001 CSO Discharges | |
|---|---|
| Year | Date |
| 2022<br>25 Overflows | 2/17/2022 |
| | 3/6/2022 |
| | 3/7/2022 |
| | 3/30/2022 |
| | 3/31/2022 |
| | 7/9/2022 |
| | 7/26/2022 |
| | 7/27/2022 |
| | 7/28/2022 |
| | 7/29/2022 |
| | 8/3/2022 |
| | 8/4/2022 |
| | 8/28/2022 |
| | 9/3/2022 |
| | 9/5/2022 |
| | 9/21/2022 |
| | 9/22/2022 |
| | 10/25/2022 |
| | 10/26/2022 |
| | 11/2/2022 |
| | 11/5/2022 |
| | 11/27/2022 |
| | 12/14/2022 |
| | 12/15/2022 |
| | 12/30/2022 |

Exhibit A

| Outfall 001 CSO Discharges | |
|---|---|
| **Year** | **Date** |
| **2023<br>29 Overflows** | 1/2/2023 |
| | 1/3/2023 |
| | 1/18/2023 |
| | 2/9/2023 |
| | 2/16/2023 |
| | 3/3/2023 |
| | 3/23/2023 |
| | 3/24/2023 |
| | 3/31/2023 |
| | 4/1/2023 |
| | 4/5/2023 |
| | 4/15/2023 |
| | 5/8/2023 |
| | 5/13/2023 |
| | 5/16/2023 |
| | 6/11/2023 |
| | 6/18/2023 |
| | 6/19/2023 |
| | 6/30/2023 |
| | 7/1/2023 |
| | 7/2/2023 |
| | 7/14/2023 |
| | 7/15/2023 |
| | 7/29/2023 |
| | 8/5/2023 |
| | 8/13/2023 |
| | 8/26/2023 |
| | 9/27/2023 |
| | 10/27/2023 |

Exhibit A

| Outfall 001 CSO Discharges ||
| Year | Date |
|---|---|
| **2024**<br>**17 Overflows as**<br>**of 4/30/24** | 1/12/2024 |
| | 1/23/2024 |
| | 1/24/2024 |
| | 1/25/2024 |
| | 3/14/2024 |
| | 3/15/2024 |
| | 3/25/2024 |
| | 3/26/2024 |
| | 4/2/2024 |
| | 4/10/2024 |
| | 4/11/2024 |
| | 4/18/2024 |
| | 4/19/2024 |
| | 4/26/2024 |
| | 4/27/2024 |
| | 4/29/2024 |
| | 4/30/2024 |

Exhibit A

| Outfall 001 Dry Weather CSO Discharges |
| --- |
| 6/19/2018 |
| 7/14/2018 |
| 6/26/2019 |
| 7/10/2019 |
| 8/25/2019 |
| 8/30/2019 |
| 11/29/2019 |
| 1/17/2020 |
| 4/28/2020 |
| 7/15/2020 |
| 4/7/2021 |
| 8/8/2021 |
| 10/24/2021 |
| 8/28/2022 |
| 11/2/2022 |
| 4/5/2023 |
| 4/15/2023 |
| 6/30/2023 |
| 10/27/2023 |