IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

UNITED STATES OF AMERICA and the
STATE OF ILLINOIS,

    Plaintiffs,

        v.

THE CITY OF EAST ST. LOUIS,
ILLINOIS,

    Defendant.

Civil Action No. 24-2592

**STIPULATION OF JUDGMENT ON LIABILITY,
STAY OF LITIGATION, AND INTERIM RELIEF**

WHEREAS, the City of East St. Louis, Illinois (the "City") owns and operates a combined sewer system and a separate sewer system, as well as associated collection system equipment and infrastructure (collectively, "sewer systems") that serves approximately 18,000 people that live within the City's limits.

WHEREAS, the City's "combined" sewers convey to a treatment plant both sanitary sewage and storm water, while the City's "separate" sewers convey only sanitary sewage.

WHEREAS, on September 11, 2019, the Illinois Environmental Protection Agency ("Illinois EPA"), under the authority of Section 402 of the Clean Water Act, 33 U.S.C. § 1342, Section 39(b) of the Illinois Environmental Protection Act, 415 ILCS 5/39(b), and 35 Ill. Adm. Code 309.101 *et seq*., issued a National Pollutant Discharge Elimination System Permit to the City (NPDES Permit No. IL0033472) (the "2019 Permit").

WHEREAS, the 2019 Permit authorized East St. Louis to discharge pollutants from Outfalls 001, 002, and 003 (collectively the "Outfalls"), subject to certain limitations and conditions in the Permit.

WHEREAS, on July 19, 2021 and May 26, 2022, the Illinois EPA issued to the City Violation Notice letters for discharging sewers into the waters of the State in violation of Sections 12(a), (d), and (f) of the Illinois Environmental Protection Act, 415 ILCS 5/12(a) and (f).

WHEREAS, on May 5, 2022, the United States Environmental Protection Agency ("EPA") and the City entered into an Administrative Order on Consent to address the City's failure to comply with certain requirements of the Clean Water Act and the 2019 Permit ("2022 CSO Order").

WHEREAS, under the 2022 CSO Order, the City agreed to monitor any overflows from the Outfalls and complete a monthly Discharge Monitoring Report identifying any such overflow.

WHEREAS, on July 27, 2023, EPA and the City entered into a second Administrative Order on Consent requiring the City to perform cleaning and maintenance work on a portion of its Combined Sewer System called the Dayline Track Trunk Line ("2023 Maintenance Order").

WHEREAS, on November 22, 2023, EPA issued to the City a Notice of Violation for failing to comply with both the 2022 CSO Order and the 2023 Maintenance Order.

WHEREAS, the 2019 Permit expired on August 31, 2024.

WHEREAS, on December 11, 2024, the United States, on behalf of the EPA, and the State of Illinois (the "State"), on behalf of the Illinois EPA, filed a Complaint against the City ("Complaint") alleging that the City was violating: (1) the Clean Water Act; (2) the Illinois Environmental Protection Act and associated regulations; (3) the 2019 Permit; (4) the 2022 CSO Order; and (5) the 2023 Maintenance Order.

WHEREAS, the United States and State have reviewed relevant documents produced by the City relating to the alleged violations in the Complaint.

WHEREAS, the City has provided evidence that it is taking steps to come into compliance with its expired 2019 Permit and satisfy some of the requirements in the 2022 CSO Order and the 2023 Maintenance Order.

WHEREAS, the United States has retained an expert to analyze financial disclosures made by the City to assist in determining the City's ability to pay a penalty and provide injunctive relief that helps move the City's Combined Sewer System towards compliance with the Clean Water Act, the Illinois Environmental Protection Act and associated regulations, and the 2019 Permit.

WHEREAS, the City did not submit a timely application for reissuance of the 2019 Permit, and thus is not authorized to discharge pursuant to this permit after August 31, 2024.

WHEREAS, the City submitted for Illinois EPA's review and approval a renewal application for the 2019 Permit on or about December 26, 2024.

WHEREAS, on March 24, 2025, Illinois EPA notified the City that the 2019 Permit renewal application requires the date for a future submittal of a Long-Term Control Plan.

WHEREAS, in December 2023, the City submitted to EPA, pursuant to the May 2022 Administrative Order on Consent, a phased Combined Sewer Overflow-Long Term Control Plan (the "Deficient Long-Term Control Plan").

WHEREAS, Phase 1 of the Deficient Long-Term Control Plan contained imprecise deadlines for completing activities necessary for developing Phase 2; and Phase 2 contained the City's strategy for complying with EPA's Combined Sewer Overflow Control Policy and ensured progress towards control of discharges from the City's Combined Sewer System.

WHEREAS, on August 22, 2025, the Illinois EPA sent the City a Review Letter that identified nine areas of the Deficient Long-Term Control Plan that required clarification or additional information, and requested that the City submit a revised Long-Term Control Plan by October 22, 2025.

WHEREAS, rather than submit a revised Long-Term Control Plan, on October 22, 2025, the City responded to the nine areas of concern identified in the Review Letter and provided a schedule to implement Phase 1 of the Deficient Long-Term Control Plan (the "Implementation Schedule").

WHEREAS, after the Complaint was filed, the City has prepared for review and approval by EPA and/or Illinois EPA the following plans and reports: (a) Public Engagement Plan dated May 27, 2025; (b) Storage Investigation Summary Report dated June 27, 2025; (c) Smart Sewer System Investigation Summary Report dated June 30, 2025; (d) Combined Sewer Outfall Smoke Testing Report for Outfall #3; and (e) Nine Minimum Controls Plan dated January 30, 2026.

WHEREAS, as part of an on-going Sanitary Sewer Evaluation Survey, the City installed 16 flow meters throughout the City's Combined Sewer System.

WHEREAS, the City collected data from 13 flow meters from approximately four months in 2025; three flow meters continue to collect data; and an additional three-month monitoring period is anticipated in the spring of 2026.

WHEREAS, work performed relating to the Sanitary Sewer Evaluation Survey has confirmed that dry weather overflows at Outfall 003 are caused by the connection of a sanitary sewer to a 72-inch storm water discharge pipe flowing to Outfall 003.

WHEREAS, the City continues to address the nine areas of concern in the Review Letter necessary for developing a Long-Term Control Plan that can be approved by the Illinois EPA.

WHEREAS, the United States, State of Illinois, and City have determined that entry of Judgment as to the City's liability under the terms set forth in this Stipulation is fair, reasonable, and in the best interests of the Parties.

NOW, THEREFORE, the Parties hereby stipulate and agree, upon the Court's approval, it shall be ordered and binding on all parties in interest as follows:

1. The foregoing recitals are hereby incorporated by reference into this Stipulation.

2. The City consents to liability only on Counts One through Nine in the Complaint.

3. The Parties agree to stay discovery.

4. The Parties ask the Court to remove the trial set for December 14, 2026 from the docket and stay these proceedings to allow the Parties to continue to collect data relevant for the preparation of a Long-Term Control Plan and discussion of appropriate injunctive relief.

5. Until further order of this Court, the City shall file on the Court's docket a bi-monthly status report on the last business day of every other month, starting on the last business day of the month in which this stipulation is entered. The bi-monthly status reports shall include:

    a. Copies of any reports, plans, or submissions made by the City for review or approval by Illinois EPA and/or EPA relating to: (i) the Implementation Schedule; (ii) the 2022 CSO Order; (iii) the 2023 Maintenance Order; (iv) the renewal application for the 2019 Permit; or (v) the Long-Term Control Plan.

    b. A discussion on the steps the City has taken since the last status report to comply with or otherwise meet any requirements or obligations in any of the reports, plans, or submissions in Paragraph 5(a) above.

c.  A discussion on any possible delays in the City's ability to meet any of the requirements or obligations in any of the reports, plans, or submissions in Paragraph 5(a) above.

d.  Any deadlines that may occur before the next status report and any reasons why the City may not be able to meet any such deadline.

e.  A discussion on the steps the City has taken since the last status report concerning funding to improve the City's sewer system, including: (i) identification of the source of any potential new funding; (ii) any deadlines for applications for such funding; (iii) whether the City submitted any applications or requests for any such funding; and (iv) any decisions concerning the City's application or requests for any such funding.

f.  A discussion on any rejection, denial, or communication the City has received since the last status report relating to any request, application, or submission seeking funds to improve the City's sewer system.

g.  A discussion on any complaints from residents of the City about the City's sewer system received since the last status report and any steps taken to resolve those complaints.

6.  Until further order of this Court, the United States and the State (collectively, the Governments) shall file on the Court's docket a bi-monthly status report on the last business day of every other month, starting on the last business day of the month after the City files its first bi-month status report. The bi-monthly status reports shall include:

a.  Status of any approvals, comments, or revisions made by the Governments on any reports, plans, or submissions made by the City for review or approval by

6

Illinois EPA and/or EPA relating to: (i) the Implementation Schedule; (ii) the 2022 CSO Order; (iii) the 2023 Maintenance Order; (iv) the renewal application for the 2019 Permit; or (v) the Long Term Control Plan.

b.  A discussion of the City's compliance with the requirements or obligations in any of the reports, plans, or submissions in Paragraph 6(a) above.

c.  A discussion of any known obstacles to or delays in the City's ability to maintain compliance with future obligations under Paragraph 6(a) above, to the extent that the Governments are aware of such obstacles or delays.

7.    The Parties shall not include in any status report the details of any settlement discussions, or confidential or personally identifiable information.

8.    Notice. The Parties agree that all submittals produced pursuant to paragraphs 5 and 6 of this Stipulation shall be submitted to the following individuals:

As to DOJ by email (preferred):    eescdcopy.enrd@usdoj.gov
Re: DJ # 90-5-1-1-12623
Kristin.Furrie@usdoj.gov
Matthew.Indrisano@usdoj.gov

As to DOJ by mail:    EES Case Management Unit
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C.  20044-7611
Re: DJ # 90-5-1-1-12623

As to EPA by email (preferred):    rogers.joan@epa.gov
demilt.elizabeth@epa.gov
grueterich.sophie@epa.gov

As to EPA by mail:    Attn: Joan Rogers
Water Enforcement and Compliance
Assurance Branch (ECW-15J)
U.S. Environmental Protection Agency, Region 5
77 West Jackson Blvd.
Chicago, IL 60604

Re: City of East St. Louis

and

Attn: Sophie Grueterich
Office of Regional Counsel (C-14J)
U.S. Environmental Protection Agency
77 West Jackson Blvd.
Chicago, IL 60604
Re: City of East St. Louis

As to the State:

Christina Briggs
Caitlin Kelly
Andrea Wright
Assistant Attorneys General
Environmental Bureau
Illinois Attorney General's Office
500 South Second Street
Springfield, Illinois 62701
Christina.Briggs@ilag.gov
Caitlin.Kelly@ilag.gov
Andrea.Wright@ilag.gov

Mike Roubitchek
Joshua Leopold
Assistant Counsels, Division of Legal Counsel
Illinois Environmental Protection Agency
2520 W. Iles Ave.
P.O. Box 19276
Springfield, Illinois 62794-9276
Mike.Roubitchek@Illinois.gov
Joshua.Leopold@Illinois.gov

Brant Fleming
Bureau of Water Permit Section
Illinois Environmental Protection Agency
2520 W. Iles Ave.
P.O. Box 19276
Springfield, Illinois 62794-9276
Brant.Fleming@Illinois.gov

8

Joe Stitely
Bureau of Water, Marion & Collinsville Regions
Illinois Environmental Protection Agency
2309 West Main Street, Suite 116
Marion, Illinois 62959
Joe.Stitely@illinois.gov

As to Defendant:

Grey Chatham, Jr.
CHATHAM & BARICEVIC
107 West Main Street
Belleville, IL 62220
greyjr@chathamlaw.org

Robert Betts
City Manager
Office of the City Manager
East St. Louis Municipal Building
301 River Park Drive
East St. Louis, Illinois 62201-3022
rbetts@cesl.us

9.      Any Party may for good cause shown, including if the City fails to meet any of the deadlines contained in the Implementation Schedule, which is attached to this Stipulation as Exhibit 1, file a motion seeking to lift the stay and ask the Court to set a trial date to determine the appropriate injunctive relief and penalty for the City's Clean Water Act violations. The filing of a motion to lift the stay shall not withdrawal or alter the City's stipulation to liability in Paragraph 2 above.

10.     The Parties agree that in addition to the deadlines contained in the Implementation Schedule, the City shall submit a revised Long-Term Control Plan no later than June 30, 2027.

11.     The Parties agree that any expert witness retained to testify at any hearing in this matter may: (1) participate in settlement meetings; (2) review, edit, or revise any settlement communications, or any reports or other submissions referenced in this Stipulation; and (3) rely

on any facts or data, whether acquired as part of a settlement communication or otherwise, when

formulating the expert's opinion.

12.     The Parties may incorporate any of the requirements in this Stipulation as part of

a Consent Decree that fully resolves this matter, including any injunctive relief and penalty

amount. Any Consent Decree shall remain subject to public comment period and approval by the

Court.

DATED: March 11, 2026                FOR THE UNITED STATES OF AMERICA:

                                      *s/Kristin M. Furrie*
                                      KRISTIN M. FURRIE
                                      MATTHEW C. INDRISANO
                                      Environmental Enforcement Section
                                      United States Department of Justice
                                      P.O. Box 7611
                                      Washington DC 20044-7611
                                      202-598-3308 (Furrie)
                                      202-535-5969 (Indrisano)
                                      kristin.furrie@usdoj.gov
                                      matthew.indrisano@usdoj.gov


                                      FOR THE STATE OF ILLINOIS:

                                      *s/Rachel Medina*
                                      RACHEL MEDINA, Chief
                                      CHRISTINA BRIGGS
                                      CAITLIN KELLY
                                      Assistant Attorneys General
                                      Environmental Bureau
                                      Illinois Attorney General's Office
                                      500 South Second Street
                                      Springfield, Illinois 62701
                                      rachel.medina@ilag.gov
                                      christina.briggs@ilag.gov
                                      caitlin.kelly@ilag.gov

FOR THE CITY OF EAST ST. LOUIS:


  s/*Grey Chatham, Jr.*
GREY CHATHAM, JR. -6312518
CHATHAM & BARICEVIC
107 West Main Street
Belleville, IL 62220
PHONE: 618-233-2200
FAX: 618-233-1589
greyjr@chathamlaw.org


APPROVED and ENTERED.

Dated: March 19, 2026

  s/ *David W. Dugan*
DAVID W. DUGAN
United States District Judge

11

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA and the STATE OF ILLINOIS,<br><br>    Plaintiffs,<br><br>        v.<br><br>THE CITY OF EAST ST. LOUIS, ILLINOIS,<br><br>    Defendant. | Civil Action No. 24-2592 |

**STIPULATION OF JUDGMENT ON LIABILITY,
STAY OF LITIGATION, AND INTERIM RELIEF**

**ATTACHMENT – IMPLEMENTATION SCHEDULE**



## OFFICE OF THE CITY MANAGER
### Robert Betts
East St. Louis Municipal Building ~ 301 River Park Drive ~ East St. Louis, IL 62201-3022

October 22, 2025

Brant D. Fleming, P.E.
Manager, Municipal Unit, Permit Section
Division of Water Pollution Control
Illinois Environmental Protection Agency
2520 West Iles Avenue
P.O. Box 19276
Springfield, IL 62794-9276

Re:     **Response to Review Letter dated August 22, 2025**
        **City of East St. Louis Combined Sewer**
        **NPDES Permit No. IL0033472**
        **Bureau ID: W1630450002**
        **Long Term Control Plan**

### 1. No Clear Compliance Path Identified
The LTCP does not commit to either the Presumption Approach (≤4 overflow events/year plus water quality compliance) or the Demonstration Approach under the USEPA CSO Policy. The City must define what steps it will take during Phase 1 to determine which approach will be pursued and included in Phase 2. Once defined, the LTCP shall include an implementation schedule identifying the control methods and timelines required to meet the chosen approach.

**City Response 1:  We have retained M3 Engineering to perform a Sanitary Sewer Evaluation Survey ("SSES") to access the condition of the combined sewer system and develop a hydraulic model so that realistic solutions can be developed to provide a cost-effective means to bring the City into compliance with the Clean Water Act requirement of ≤4 overflow events/year.   Phase 1 of the SSES is underway with an anticipated completion date of May 2026. Phase 2 will begin in the next few months. Phase 2 consists of additional flow monitoring, model development, project identification and optimization, and development of the project implementation schedule. Phase 2 will be completed by 12/31/2026. This completion of Phase 2 of the SSES should satisfy Phase 1 of the submitted LTCP.**

### 2.     Overflow Frequency Exceeds Federal Threshold
Current estimates indicate approximately 24 CSO events per year, which exceeds the threshold of four (4) events per year under the Presumption Approach, should that approach be selected for Phase 2 implementation. The LTCP should acknowledge this exceedance and outline how planned control measures will bring the system into compliance.

**City Response 2: Same as No. 1:  It is anticipated that over the next year, the SSES will be completed, and the LTCP will be updated based on the results of the study. This updated LTCP will outline the measures that will be taken to limit the number of overflow events to four or fewer per year and eliminate CSO #003.**

3.    **Lack of Flow Monitoring and Quantification**

At the time of the LTCP submittal, no flow monitoring equipment was installed at any CSOs. While installation is planned, the City should provide an update of CSO monitoring that has taken place since the LTCP was developed and submitted to IEPA and outline any continued or planned future monitoring. On Page 5 of the LTCP, under **COMBINED SEWER OUTFALL MONITORING** it is stated "a monitoring plan will be developed and added to the LTCP via an amendment". Has the monitoring plan been developed and amended to the LTCP?

**City Response 3: Sixteen flow meters have been installed on combined and sanitary sewer mains throughout the East St. Louis collection network. These flow meters were installed between June and August of 2025. These sixteen meters have been collecting data following installation and will continue to collect data until the end of October 2025. A second three-month monitoring period is anticipated in the spring of 2026.**

4.    **CSO #003 Discharges to a Sensitive Area**

CSO #003 discharges to Frank Holten State Park Lake, a designated sensitive area. This outfall should be prioritized for planning, monitoring, and elimination. The LTCP should provide a clearer and potentially accelerated timeline for eliminating or relocating the outfall.

**City Response 4: M3 Engineering Group has prepared a report that outlines four alternatives for eliminating CSO #003. The City is reviewing the report and its recommendations and is in the process of securing funding to eliminate CSO 3. The City is committed to eliminating CSO #003 through the execution of one of these alternatives by 12/31/2026.**

5.    **Nine Minimum Controls (NMC) Plan Delayed**

The LTCP proposes to complete the NMC Plan by the end of Phase I (December 31, 2027). These are baseline controls and should be implemented sooner. Please provide a status update on implementing the NMC plan and expected completion date.

**City Response 5:  The City has engaged a consultant to assist in completing the NMC Plan. Drafting of the NMC Plan is currently in progress, with an expected completion date of January 30, 2026.**

6.    **No Water Quality Monitoring During CSO Events**

There is currently no plan to monitor receiving water quality during CSO events. Water quality monitoring is essential, particularly if the Demonstration Approach is considered, or if compliance with standards during overflows needs to be validated. Please incorporate water quality monitoring and provide an update of any water quality monitoring that has taken place since the LTCP was developed and submitted to IEPA.

**City Response 6: The City agrees that it is not currently monitoring water quality during CSO events.  The objective is to limit CSO events to four overflows per year, in compliance with standards, and therefore not requiring monitoring during overflows.**

7.    **Sewer Separation Timeline is Impractical**

The LTCP outlines a full sewer separation effort projected to take approximately 125 years. While this may be a long-term goal, the City should not rely on separation as the primary compliance mechanism. Near-term alternatives and achievable milestones must be included.

**City Response 7: Full sewer separation is not practical. The City will continue to develop a hydraulic model that will allow a more realistic cost-effective plan for meeting the compliance standard of 4 overflows per year. Once specific projects have been identified and cost estimates have been prepared, a project specific schedule will be developed. Currently, the anticipated completion of this schedule is 12/31/2026.**

B000031

8.      **Public Participation Plan Not Yet Implemented**

Public engagement is a required element of the CSO Policy. The LTCP indicates that the outreach plan is still in development. Please ensure that a public participation process is implemented early in Phase I and documented.

**City Response 8: The City does have a Public Participation Plan, and we currently hold quarterly meetings, since 2024, to engage the public by inviting public comment, and to inform the public of City activities and plans.**

9.      **System Ownership Transfer Creates Uncertainty**

The LTCP notes a possible transfer of the sewer system to Illinois American Water. The City should explain how existing and future LTCP obligations will be maintained and fulfilled through such a transition.

**City Response 9: The possible transfer is still exploratory at this point, and the City will continue to comply with the LTCP obligations and will update this status if something changes.**

Finally, the City is updating its LTCP with the relevant changes since the initial submission.  Upon completion of the SSES and subsequent modeling anticipated during Phase 1 of the LTCP, the City will submit an amended LTCP.

Sincerely,

**Robert Betts**
City Manager